UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD CANNON, an individual Michigan
resident,

        Plaintiff,

           v.

HOME SOURCE DETROIT, LLC, a Michigan
limited liability company, LESLIE COXON, an
individual Michigan resident, and TODD HARRIS,
an individual Michigan resident,

        Defendants.

_____/

CASE NO. 4:13-CV-11577
JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR INJUNCTIVE
RELIEF (docket #5) and DEFENDANTS' MOTION
TO DISMISS (docket #9)**

I.     RECOMMENDATION: The Court should grant defendants' motion to dismiss, and should

dismiss plaintiff's federal claims under the Fair Housing Act. The Court should also decline to

exercise supplemental jurisdiction over plaintiff's state law claims, and should dismiss those claims

without prejudice to plaintiff refiling them in state court. Finally, the court should deny plaintiff's

motion for injunctive relief.

II.    REPORT:

A.    *Procedural Background*

       Plaintiff Ronald Cannon, proceeding *pro se* commenced this action on April 8, 2013, against

defendants Home Source Detroit, LLC, and two home source employees, Leslie Coxon and Todd

Harris. The Court dismissed the complaint on April 9, 2013, while granting plaintiff leave to file an

amended complaint. Plaintiff filed his amended complaint on April 18, 2013. Generally, plaintiff

alleges that defendants are attempting to force him to either purchase or vacate property of which he

is in possession, but which Home Source acquired by quit claim deed.  Plaintiff claims that the

property rightly belongs to him, is the subject of ongoing state court probate proceedings, and that

defendants know or should know that Home Source's title is clouded.  Plaintiff asserts state law

claims for fraudulent misrepresentation and extortion, and federal claims under the Fair Housing Act.

With respect to the federal claims, plaintiff makes the following relevant allegations:

43.  Defendants['] . . . method to sell or rent the property to Plaintiff was to compel the Plaintiff by intimidation, coercing, and compliance to obedience or submission in a vigorous and forceful manner for Plaintiff to buy or rent property, by sending Plaintiff a Notice to Quit, along with Intentions to Evict, together with a threat in writing that they were going to report to all utility companies that the utilities may be on illegally, and they will contact the Detroit Police Department to make a complaint and report regarding Home Source Detroit obtaining possession of the property, if the Plaintiff have [sic] not contacted Home Source Detroit's office by February 21st, 2013.

44.  That Home Source's actions were prejudiced and discriminatory, and they were done for the purpose of coercing the Plaintiff to rent or buy the property.

. . . .

46.  Ostensibly, that because the Plaintiff is a black man living in a predominately black neighborhood, Defendants Home Source Detroit and Todd Harris made the bias statement that they "believe" that the Plaintiff's utilities may be on illegally.

47.  That Defendants . . . do[] not prejudge and compel Caucasian, or non-blacks to rent or buy property, nor do the Defendants send bias statements to non-blacks and Caucasians living in predominately white neighborhoods or gated communities that they "believe" their utilities may be on illegally.

48.  Defendants . . . discriminated against the Plaintiff on the basis of his belonging to the black race, and live [sic] in a poor, disadvantaged, high-risk black neighborhood and zip code in the city of Detroit, in the sale or rental of said housing and other residential real-estate transaction[s] pursuant to 42 U.S.C. subsection 3605(b)(1)-(2), by coercing the Plaintiff to buy or rent the real estate located at 4391 Pacific Street via intimidating Plaintiff under threat of being evicted, for Plaintiff to sign a contract in the form of a Letter of Intent which provided the "option" to either (1) pay $6,000 cash (90 days same as cash) 2. pay $750 month for 12 months, or 3. $500 a month for 24 months.

2

49.     Defendants . . . do[] not compel or coerce Caucasian and non-blacks in exclusive or gated communities inside or outside of Detroit to rent or buy property under the threat of being evicted, or in predominately white neighborhoods for that matter.

        . . . .

51.     Defendants . . . actions against the Plaintiff was [sic] done solely because Plaintiff is black and living in a targeted neighborhood and zip code by the Defendants.

52.     Defendants . . . do[] not contact gated or non-black community and neighborhoods outside of the city of Detroit, Michigan to report to all utility companies, including DTE that defendants believe that the utilities may be on illegally.

53.     Defendants . . . do[] not contact police departments in non-black communities or neighborhoods outside the city of Detroit in order to obtain the true names and identities of who is currently occupying the property when renting or selling property to them.

54.     Defendant, Todd Harris does not send non-black people letters that if house is occupied that he gets the name and numbers of the occupants in one letter and then send them another letter with the threat of contacting the Detroit Police Department to get the names and numbers of the occupants.

55.     Defendants . . . contact[ed] the Detroit Police Department as a guise to (1) intimidate and frighten the Plaintiff and the black community and neighborhood residents to move out of the property, (2) to weed out the disenfranchised felons, probation and parole violators and absconders, (3) to harass the occupants residing in the property, (4) to take property from the unsophisticated property owners and the elderly, (5) to unfairly prey on the misfortunes of the residents of blighted neighborhoods in Detroit that are populated by black people.

56.     Defendants . . . do[] not contact police departments outside the city of Detroit as a guise to intimidate the non-black community and neighborhood residents to move, to weed out felons, probation and parole violators and absconders or to harass the occupant residing in the property.

        . . . .

58.     Defendants . . . armed with information of both a lis pendens on the property, together with an order from two Wayne County Probate judges, ignores these legal documents and pursues intimidation and fraudulent misrepresentation

3

tactics against the Plaintiff [who] is a black man living in a predominately black neighborhood in the city of Detroit.

59.    Defendants . . . do[] not ignore legal orders by county probate judges or lis pendens in non-black neighborhoods and communities.

60.    That the actions of Defendants . . . against the Plaintiff, [are] discriminatory and prejudicial treatment of the Plaintiff based upon his membership in a certain group or category.

        . . . .

62.    That Defendants . . . do[] not threaten to evict non-blacks who ha[ve] a lis pendens, or court orders rendering the property harmless relative to their real estate.

63.    The Plaintiff is a victim of unequal treatment, and discriminatory practices by all three defendants.

64.    That Defendants . . . discriminate and prey on the condition of sale or rental against people of color and target[] the black community in the city of Detroit who are unsophisticated home buyers to [sell] them land contracts under the guise of buying or renting via fraudulent misrepresentation and unfairly dislocate blacks from their homes through threats and illegal summary eviction proceedings.

Amended Compl., ¶¶ 43-64.  Plaintiff claims that defendants actions violate 42 U.S.C. §§ 3604, 3605,

3617, and 24 C.F.R. § 1.4.

        The matter is currently before the Court on two motions filed by the parties.  First, on April

18, 2013, plaintiff filed a motion for injunctive relief.  Plaintiff seeks an injunction preventing

defendants from continuing with eviction proceedings against him, making harassing telephone calls,

appearing at the property, and otherwise taking any actions to destroy or distribute the property.

Defendants filed a response to this motion on May 17, 2013, and plaintiff filed a reply on May 28,

2013.  Second, on May 6, 2013, defendants filed a motion to dismiss pursuant to FED. R. CIV. P.

12(b)(6).  Defendants argue that plaintiff's federal claims fail to state a claim upon which relief may

be granted.  Plaintiff filed a response to defendants' motion on May 13, 2013, and defendants filed

4

a reply on May 22, 2013. For the reasons that follow, the Court should grant defendants' motion to dismiss, deny plaintiff's motion for preliminary injunction, and should dismiss plaintiff's federal claims. If the Court accepts this recommendation, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, and should dismiss those claims without prejudice to plaintiff pursing those claims in state court.

B.    *Defendants' Motion to Dismiss*

    1.    *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at

5

570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

2.      *Analysis*

The Fair Housing Act (FHA) provides, in relevant part, that

it shall be unlawful–

6

>(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse
>to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling
>to any person because of race, color, religion, sex, familial status, or national origin.
>(b) To discriminate against any person in the terms, conditions, or privileges
>of sale or rental of a dwelling, or in the provision of services or facilities in connection
>therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a), (b).  To state a claim under § 3604(a), plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified to rent or purchase certain property or housing; (3) he was rejected; and, (4) the housing or rental property remained available thereafter. *See Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996) (citing *Selden Apartments v. United States Dep't of HUD*, 785 F.2d 152, 159 (6th Cir. 1986)).  To state a claim under § 3604(b), "plaintiff must allege facts that demonstrate: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified to receive services from [the defendant]; (3) [defendant] denied plaintiff the services for which she was qualified; and (4) [defendant] provided the services it denied to plaintiff to a similarly situated party during a period relatively near the time plaintiff was denied the services."  *Collins v. Chesapeake Commons Holdings, LLC*, No. S 09–1816, 2011 WL 2580360, at *3 (E.D. Cal. June 28, 2011) (citing *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997)).  The FHA further provides:

>It shall be unlawful for any person or other entity whose business includes engaging
>in residential real estate-related transactions to discriminate against any person in
>making available such a transaction, or in the terms or conditions of such a transaction,
>because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605(a).  For purposes of § 3605, "residential real estate-related transaction" is defined as "(1) [t]he making or purchasing of loans or providing other financial assistance–(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate," and "[t]he selling, brokering, or appraising of residential real property."  42 U.S.C. § 3605(b). "To state a claim under Section 3605 of the FHA, the plaintiff must plead that (1) []he was a member of a protected class; (2) []he attempted to engage in a 'real estate-related transaction' with the

defendants, and met all relevant qualifications for doing so; (3) the defendants refused to transact business with the plaintiff despite h[is] qualifications; and (4) the defendants continued to engage in that type of transaction with other similarly-situated parties." *Sanders v. PFG Mortg. Trust I*, No. 11–CV–13884, 2012 WL 666799, at *3 (E.D. Mich. Feb. 29, 2012) (Rosen, J.) (citing *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 345 (6th Cir.1994); *Hood v. Midwest Savings Bank*, 95 Fed. Appx. 768, 778 (6th Cir. 2004)).

Finally, the Act sets forth an anti-retaliation provision, making it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Section 3613 provides for a private right of action to persons aggrieved by violations of the Act. *See* 42 U.S.C. § 3613.

Here, plaintiff's allegations fail to state a claim for relief under the FHA. To prevail on any of his claims under the FHA plaintiff "must show proof of intentional discrimination." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012). Here, plaintiff has not offered sufficient factual allegations to state a plausible claim that defendants acted with "discriminatory animus." *Michigan Protection & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994). Plaintiff alleges, in conclusory fashion, that defendants treated him differently than similarly situated Caucasians. He does not, however, provide any specific factual allegations to support these bare assertions of discriminatory treatment. *Iqbal*, *supra*, is instructive. In that case, the plaintiff alleged that the defendants subjected him to harsh conditions of confinement on the basis of his race, religion, and national origin. *See Iqbal*, 556 U.S. at 666. The Court concluded that plaintiff's complaint failed to state a claim under the *Twombly* standard. The Court began by noting that the plaintiff's

8

allegations that the defendants 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" were "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," and thus were "not entitled to be assumed true." *Id*. at 680-81 (quoting *Twombly*, 550 U.S. at 555). The Court further explained that plaintiff's allegations that the defendants arrested and detained in restrictive conditions thousands of Arab Muslim men following the 9/11 terrorist attacks were entitled to be taken as true, but were insufficient to state a claim. Although "[t]aken as true, these allegations are consistent with [defendants] purposefully designating detainees 'of high interest' because of their race, religion, or national origin[,] . . . given more likely explanations, they do not plausibly establish this purpose." *Id*. at 681. The Court explained that "[o]n the facts [plaintiff] alleges the arrests [defendants] oversaw were likely lawful and justified by [their] nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *Id*. at 682. The Court reasoned that "[a]s between that 'obvious alternative explanation' for the arrests and the purposeful, invidious discrimination [plaintiff] asks us to infer, discrimination is not a plausible conclusion." *Id*. (quoting *Twombly*, 550 U.S. at 567). For these reasons, the Court concluded that the plaintiff had failed to provide sufficient "factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id*. at 683 (quoting *Twombly*, 550 U.S. at 570). Because plaintiff's complaint did "not contain any factual allegation sufficient to plausibly suggest [defendants'] discriminatory state of mind[,], [h]is pleadings [did] not meet the standard necessary to comply with Rule 8." *Id*.

The reasoning of *Iqbal* is directly applicable here. As in *Iqbal*, plaintiff has offered nothing

more than bare assertions that he was treated differently than other similarly situated Caucasians. Further, as in *Iqbal*, plaintiff's bare assertion of discriminatory animus is not a plausible conclusion in light of the alternative explanation for defendants' actions that is apparent from plaintiff's own allegations, namely, their attempt to remove someone whom they viewed as essentially a squatter from property that they reasonably believed was rightfully owned by defendant Home Source.  And, as in *Iqbal*, although plaintiff's complaint is replete with allegations of actions taken by defendants, it is devoid of "any factual allegation sufficient to plausibly suggest [defendants'] discriminatory state of mind."  *Iqbal*, 556 U.S. at 663.  In these circumstances, plaintiff's complaint fails to state a claim under the Fair Housing Act.  *See HDC*, 675 F.3d at 612-13; *Johnson v. CMC Property Leasing, Inc.*, No. 12-1309, 2012 WL 6025601, at *4-*5 (D. Kan. Dec. 4, 2012); *Boykin v. Gray*, 895 F. Supp. 2d 199, 208-10 (D.D.C. 2012); *cf. Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011).[1]  Accordingly, the Court should grant defendants' motion to dismiss.

D.    *Supplemental Jurisdiction over Plaintiff's State Law Claims*

If the Court accepts the foregoing analysis with respect to plaintiff's claims under the FHA, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. Congress has provided for limited, supplemental jurisdiction over state law claims that are related to

---

[1]Further, even if plaintiff had sufficiently alleged discriminatory animus, plaintiff has failed to state a claim for relief under § 3604(a) or (b) because he does not allege that defendants refused to sell or rent to him or discriminated against him in the terms or conditions of his purchase or rental. Likewise, plaintiff's claim under § 3605 fails because he does not allege that defendants refused to engage in a real estate transaction with him on account of his race.  On the contrary, plaintiff's own allegations establish that defendants did attempt to sell or rent the home to him, but that plaintiff refused to deal with defendants because he believed himself to be the rightful owner.  Plaintiff's allegations do not show a refusal on the part of defendants to rent or sell to him on account or his race, or a refusal to provide financing to him; rather, they show nothing more than a property owner's attempt to use lawful means to regain possession of its property.  Whether or not defendant Home Source was in fact the rightful owner of the property, a fact which plaintiff disputes, its actions are not encompassed within the activities covered by §§ 3604 and 3605.

10

federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over all
> other claims that are so related to claims in the action within such original jurisdiction
> that they form part of the same case or controversy under Article III of the United
> States Constitution. . . .

28 U.S.C. § 1367(a).  However, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In determining whether to exercise supplemental jurisdiction, courts should consider the following factors:  judicial economy, convenience, fairness to litigants, and comity.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  But, when "federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also, Gibbs*, 383 U.S. at 726 ("if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1307 (9th Cir. 1992); *Morse v. University of Vermont*, 973 F.2d 122, 127-28 (2d Cir. 1992); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994); *Heller v. CACL Federal Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991).

Thus, "federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment."  *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986).  Accordingly, federal courts routinely decline to exercise supplemental jurisdiction over state law claims where the plaintiffs' federal civil rights claims are dismissed.  *E.g., Martinez v. Colon*, 54 F.3d 980, 990-91 (1st Cir. 1995); *Rhyne v.*

11

*Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992); *Wynn v. Morgan*, 861 F. Supp. 622, 637 (E.D. Tenn. 1994); *Stera v. Hunt Real Estate Corp.*, 859 F. Supp. 661, 668 (W.D.N.Y 1994); *Mark v. Borough of Hatboro*, 856 F. Supp. 966, 976-77 (E.D. Pa. 1994), *aff'd*, 51 F.3d 1137 (3d Cir. 1995); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993), *aff'd*, 25 F.3d 1052 (6th Cir. 1994); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413-14 (D. Del. 1993); *Lahaza v. Azeff*, 790 F. Supp. 88, 93-94 (E.D. Pa. 1992); *Procopio v. Johnson*, 785 F. Supp. 1317, 1320 (N.D. Ill. 1992), *aff'd*, 994 F.2d 325 (7th Cir. 1993). Here, as explained above, plaintiff's federal claims are all subject to dismissal, and thus the Court should decline to exercise supplemental jurisdiction over plaintiff's purported state law claim.

Further, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if there are compelling reasons for doing so. 28 U.S.C. § 1367(c)(4). Here, comity counsels against exercising supplemental jurisdiction. At its core, this is a simple dispute over ownership of the property at issue. And the determination of rights and interests in property is traditionally the domain of the States. Further, Michigan has established a detailed statutory scheme for eviction and ejectment actions that could be implicated by plaintiff's state law claims. In light of these factors and the dismissal of plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and should dismiss those claims without prejudice to plaintiff refiling them in state court.

E.     *Plaintiff's Motion for Injunctive Relief*

In his motion for injunctive relief, plaintiff seeks an injunction preventing defendants from continuing with eviction proceedings against him, making harassing telephone calls, appearing at the property, and otherwise taking any actions to destroy or distribute the property. The Court should deny plaintiff's motion.

1.      *Legal Standard*

"In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).

"'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774.  Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").  Further, plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one.  "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  "[T]he

13

proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiff may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate his entitlement to injunctive relief.

With respect to the likelihood of success factor, plaintiff need not show that he is sure to prevail on any of his claims. However, he must, "at a minimum, show[] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (internal quotation omitted); *see also*, *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 & n.2 (6th Cir. 1987). With respect to the harm factor, the harm that would result in the absence of the injunction must be irreparable, not merely substantial. As the Supreme Court has noted,

> "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 924 (D.C. 1958)). In short, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. In evaluating the harm facing the plaintiffs, the Court must evaluate three factors: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

    2.    *Analysis*

Here, the preliminary injunction factors weigh against injunctive relief. As explained above,

14

plaintiff has not sufficiently pleaded a claim for violations of the Fair Housing Act, and thus there is no likelihood of success on the merits. Further, plaintiff has not shown that any harm caused by defendants is irreparable in the sense of not being fully compensable by monetary damages. There is no strong public interest implicated in this case, and the balance of harms does not strongly favor plaintiff, as defendants are equally harmed in not being able to take possession of and alienate the property. Accordingly, the Court should deny plaintiff's motion for injunctive relief.

F.    *Conclusion*

In view of the foregoing, the Court should grant defendant's motion to dismiss and should dismiss plaintiff's claims under the Fair Housing Act. The Court should also decline to exercise supplemental jurisdiction over plaintiff's state law claims, and should dismiss those claims without prejudice to plaintiff refiling the claims in state court. Finally, the Court should deny plaintiff's motion for injunctive relief.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 24, 2013                         s/ Paul J. Komives_____
                                             PAUL J. KOMIVES
                                             UNITED STATES MAGISTRATE JUDGE

I hereby certify that the foregoing document was sent to parties of record on July 24, 2013, electronically, and/or by U.S. mail.

                                             s/Michael Williams_____
                                             Case Manager for the
                                             Honorable Paul J. Komives.